ALBERT CONWAY, Superintendent of Insurance of the State of New York, as Liquidator of the MOTOR CAR MUTUAL FIRE INSURANCE COMPANY, Plaintiff, *v.* NORTH SIDE LUMBER COMPANY, INCORPORATED, Defendant.

ALBERT CONWAY, Superintendent of Insurance of the State of New York, as Liquidator of the MOTOR CAR MUTUAL FIRE INSURANCE COMPANY, Plaintiff, *v.* LEO TURBOW, Defendant.

ALBERT CONWAY, Superintendent of Insurance of the State of New York, as Liquidator of the MOTOR CAR MUTUAL FIRE INSURANCE COMPANY, Plaintiff, *v.* JULIUS B. LICHTENSTEIN, Defendant.

Municipal Court of New York, Borough of Manhattan, Sixth District, September 4, 1931.

*Joseph G. Bill* [*Pinckney Estes Glantzberg* of counsel], for the plaintiff.

*Morris Hillquit*, for defendants North Side Lumber Company, Incorporated, and Turbow.

*I. Montefiore Levy*, for the defendant Lichtenstein.

EDER, J. The Motor Car Mutual Fire Insurance Company was a mutual insurance company, operating under article 10-A of the Insurance Law of this State. It was placed in liquidation by an

order of the Supreme Court of this State, dated and entered March 7, 1922, upon application of the Superintendent of Insurance. He immediately thereafter took possession of its books, records, assets and other property. On or about March 13, 1922, a notice of liquidation of said company was forwarded to all policyholders, creditors and other persons who appeared and were interested in the affairs of the company, advising those who held claims against it to file with him a proof of claim therefor on or before May 1, 1922. Immediately after the mailing of this notice of liquidation the Superintendent commenced an audit of the books of the company to determine the amount of money necessary to pay its liabilities, and as a result of such audit a first report, audit and petition was filed in the New York county clerk's office on December 30, 1922. A notice of the filing thereof and a notice of motion to confirm and also a notice of the amount of assessment due from members was mailed to all policyholders and to all persons who had filed proof of claim. On April 2, 1923, an order was made and entered in said Supreme Court, confirming, in all respects, the petition, report, audit and assessment roll thereto annexed. The defendants, members and policyholders of the company, failed to pay the assessment levied against them by said order of confirmation.

On February 19, 1929, a summons was served on defendants North Side Lumber Company, Incorporated, and Turbow, and on the defendant Lichtenstein on March 19, 1929. In each case the defense of the Statute of Limitations is interposed and relied on, the contention being that the tolling of the statute is to be reckoned from March 7, 1922, the date of liquidation, and not from April 2, 1923, the date and entry of the order confirming the amount of the assessment previously fixed by the Superintendent of Insurance.

The sole question involved is when the cause of action accrued.

Section 48 of the Civil Practice Act, so far as relevant, provides that (1) An action upon a contract obligation or liability express or implied, except a judgment or sealed instrument, and (2) an action to recover upon a liability created by statute, except a penalty or forfeiture, must be commenced within six years after the cause of action has accrued. If the cause of action accrued on March 7, 1922, the date of liquidation, and not on April 2, 1923, the date and entry of the order of confirmation of the amount of the assessment previously fixed by the Superintendent of Insurance, clearly the Statute of Limitations is operative and bars the actions. But I am unable to concur in the contention of the defendants. I think it inconsequential, so far as the tolling of the

statute is concerned, whether the cause of action is founded upon contract or upon a liability created by statute, although it is clear that the plaintiff brings the action as one to recover upon a liability created by statute. I say this because the defendants knew and must be charged with knowing that when they entered the company as a mutual company, that assessments could be levied up to twice the amount of, and in addition to, the cash premium written in the policy, for the purpose of paying losses. The law so provides, and so does the policy. (Insurance Law, § 346, as amd. by Laws of 1923, chap. 811; *Beha* v. *Weinstock*, 247 N. Y. 221.)

Section 63 of the Insurance Law (as amd.) authorizes the Superintendent of Insurance, under the supervision of the court, to liquidate insurance companies. (*Matter of Casualty Company of America*, 244 N. Y. 443.) This was formerly accomplished by receivers specially appointed, but is now delegated to the Superintendent of Insurance (*Matter of Casualty Company of America, supra*), subject, however, to the approval of the court. The cautious phrases employed are indicative enough that the Superintendent does not act entirely independently and without restriction, but, rather, that his acts must receive the approbation of the court before they become final, conclusive and binding. Thus, in subdivision 3 of section 63 (as amd. by Laws of 1918, chap. 119), while it provides that the liquidation may be made by and under the direction of the Superintendent, it is to be observed that he may only deal with the property and business of the corporation, " as the court or the justice * * * may direct." And by subdivision 6 thereof (as amd. by Laws of 1912, chap. 217) he may engage assistants, but their compensation and all expenses of conducting the liquidation are " subject to the approval of the court." Receivers, conservators or liquidating agents are of but one category, whatever the nomenclature employed, and the Superintendent of Insurance, as a liquidator, occupies but the status of a receiver; indeed, he is the substitute and successor of the receiver heretofore specially appointed in such liquidation proceedings. (*Matter of Casualty Company of America, supra.*) It is a general rule that the acts of receivers, or those occupying that position, are subject to the approval of the court (53 C. J. 139, 143, 144), and this power of supervision by the court is a necessary incident to its proper direction of the course of liquidation. (*Matter of Casualty Company of America, supra.*)

Section 63, subdivision 3, of the Insurance Law provides that the Superintendent " shall be vested by operation of law with title to all of the property, contracts and rights of action of such corporation as of the date of the order so directing them to liquidate."

And, further: " The rights and liabilities of any such corporation, and of its creditors, policyholders, stockholders and members, and of all other persons interested in its assets, shall, unless otherwise directed by the court, be fixed as of the date of the entry of the order directing the liquidation of such corporation in the office of the clerk of the county wherein such corporation had its principal office for the transaction of business upon the date of the institution of proceedings under this section."

It is this language of the statute which gives rise to the dispute as to when the tolling of the statute begins. But the phrases that the Superintendent becomes vested with " rights of action," " as of the date of the order " directing liquidation and that " the rights and liabilities " of " policyholders, stockholders and members * * * shall * * * be fixed as of the date of the entry of the order directing the liquidation," mean and refer, I think, to rights and liabilities on that date actually existing and matured, and not those which can only thereafter come into being, resulting from subsequent approval and confirmation by the court of acts previously asserted or done by the Superintendent.

Section 346 of the Insurance Law provides for a fund to pay losses, and that if the corporation is not possessed of admitted assets above its unearned premiums, sufficient for the payment of the incurred losses and expenses, as estimated or determined, it shall make an assessment for the amount needed to pay such losses and expenses upon the members liable to assessment therefor, in proportion to their several liability, and shall not be less than an amount equal to twice the amount of, and in addition to, the cash premium provided for in the policy. The only funds to pay insurance losses come from the premiums or assessments. (*Beha* v. *Weinstock, supra.*) This liability is secondary and contingent upon an insufficiency in the assets of the corporation to pay its debts.

The Superintendent, when he took over the company for liquidation, pursuant to the order of liquidation, became vested with all the rights the company had on that date, and such other and additional rights as inured to him by virtue of sections 63 and 346 of the Insurance Law. Pursuant thereto, he prepared a report showing an assessment was necessary in the amount recommended for approval of the court. This proceeding in the Supreme Court for an assessment was, in effect, a proceeding to accomplish two purposes: *First*, to obtain approval of the report of the necessity for an assessment, and *second*, if found necessary, to definitely fix the amount which the policyholders would be required to pay. Until these things were done, which could only be evidenced by an order of approval or confirmation, the cause of action against the policy-

holder did not accrue, although his obligation was assumed at the time he entered the mutual company. (*Beha* v. *Weinstock, supra.*)

Upon the fixing of the assessment by the Superintendent, as liquidator, the defendants' obligation was to pay this amount, but only provisionally, subject to approval by the court; but until then he was under no legal necessity to pay anything until his obligation to pay had become *complete;* and until then the legal effect of the assessment by the Superintendent was but a mere naked assertion. The obligation to pay did not become complete until the assessment was ratified by the court, and the cause of action did not accrue until the order of confirmation was made. " The time when ' the cause of action has accrued,' as that term is used in those provisions of the Code of Civil Procedure limiting the periods within which actions must be commenced, means the time when the plaintiff first became enabled to maintain the particular action in question." (*Cary* v. *Koerner,* 200 N. Y. 253, 259.)

Under the provisions of the statute, the acts of the Superintendent being subject to the approval of the court, the fixing of the assessment by him required confirmation to be effective, and, hence, it did not ripen into an established fact and into a definite sum until that time. Therefore, the assessment "became a legal claim against the defendant at the date of the confirmation of the report of the liquidator and of his assessments made therein." (*Conway* v. *Kaupp,* 139 Misc. 154.) In *Conway* v. *Plank* (136 Misc. 403) the court employs the expression " the right of action for the assessment did not accrue until the assessment was determined and levied," and it is said this view is inconsistent with that in *Conway* v. *Kaupp* (*supra*), holding that the assessment becomes a legal claim against the defendant at the date of the confirmation of the report of the liquidator and of his assessments made therein. I think, however, that the court intended in *Conway* v. *Plank* (*supra*) that the determination and levy of the assessment was subject to the approval of the court, though not so expressed; this is seemingly so from the view so expressly stated in the later case of *Conway* v. *Kaupp* (*supra*), in which view I concur.

To my mind the conflict occurs from the omission to recognize that there is a broad distinction between the maturing of a liability as a prerequisite to the successful prosecution of an action for its enforcement, and the mere attaching of the liability itself. As to accrual of a cause of action, it is the general rule that it does not accrue within the Statute of Limitations until the plaintiff has a right of action. (*Cary* v. *Hatch,* 91 Misc. 269.) Here, the Superintendent's act of fixation of the assessment merely attached a provisional liability, which did not mature into a liability until

confirmation by the court; upon the happening of that event, *eo instante,* a right of action accrued, and the tolling of the Statute of Limitations began then and not from the date of liquidation.

The actions, therefore, are not barred by the Statute of Limitations, and plaintiff is, accordingly, entitled to judgment.